# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOLETHA CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-55-R |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant (Commissioner) issued a final decision denying Plaintiff's application for supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Court Judge David L. Russell referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs,[2] and recommends that the court affirm the Commissioner's decision.

---

[2] For the parties' briefs, the undersigned's citations refer to the court's CM/ECF pagination.

## I. Administrative proceedings.

In her application for benefits,[3] Plaintiff alleged that her impairments became disabling in May 1990.[4] AR 150-58. The Social Security Administration (SSA) denied Plaintiff's claim, and at her request, an ALJ conducted a hearing. *Id.* at 56-84. In his August 2012 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 49. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-7, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff

---

[3] Without any citation, Plaintiff's counsel states that she filed for disability insurance benefits. Doc. 11, at 1. The record reflects that Plaintiff only sought supplemental security income. AR 150-58.

[4] Although Plaintiff alleged that her disability began in May 1990, the Administrative Law Judge (ALJ) used her filing date – November 22, 2010 – as her disability start date. AR 41, 49; *see* 20 C.F.R. § 416.335.

2

bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the ALJ will conduct a residual functional capacity (RFC)[5] assessment at step four to determine what Plaintiff can still do despite her impairments. *See* 20 C.F.R. § 416.945(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Plaintiff's claims.

Plaintiff alleges that the ALJ committed numerous legal errors. For example, Plaintiff first seeks reversal based on the ALJ's use of the words "routine" and "superficial" in the RFC assessment. Doc. 11, at 4. Then, Plaintiff claims that the ALJ did not incorporate Plaintiff's "fair" prognosis into the RFC assessment. *Id.* at 4-5. In Plaintiff's next, related arguments, she alleges that the ALJ ignored her low Global Assessment of Functioning (GAF) scores and improperly rejected the treating physician's GAF-score

---

[5] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

3

opinions. *Id.* at 8-9, 13-15. Plaintiff further complains that the ALJ "cherry-picked" the record when he relied on notations that Plaintiff was "doing well" on medications, and ignored evidence relating to "powerful prescription medications," numerous low GAF scores, hallucinations, hospitalizations, and multiple suicide attempts. *Id.* at 6-10. Finally, Plaintiff claims that the ALJ failed to discuss "lay" evidence and ignored evidence relating to her right wrist impairment. *Id.* at 11-13.[6]

The undersigned has examined these allegations and finds no reversible error.

## IV. Analysis.

### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). As the Tenth Circuit has cautioned, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Moreover, the court may affirm the Commissioner's decision, despite the ALJ's error, "where, . . . we [can] confidently say that no reasonable

---

[6] In part, the Commissioner defends the ALJ's decision on grounds that he considered Plaintiff's subjective complaints and reasonably found that she was not fully credible. Doc. 12, at 28-30. The undersigned does not read Plaintiff's brief to challenge the ALJ's credibility findings, and has not addressed the issue.

4

administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. The ALJ's findings.

The ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since November 2010; (2) has severe "schizophrenia, depression, personality disorder, and hepatitis C"; and (3) has the RFC to perform a full range of exertional work and "can perform simple tasks with routine supervision," "relate to supervisors and coworkers on a superficial work basis," and "must not work with the general public." AR 46. With this RFC, the ALJ opined that Plaintiff can perform "jobs that exist in significant numbers in the national economy." *Id.* at 48.

### C. The ALJ's alleged error in using the terms "routine" and "superficial."

The ALJ found that Plaintiff can perform tasks with "routine" supervision and can work with supervisors and coworkers on a "superficial" basis. *Id.* at 46. Without any citation to legal authority, Plaintiff seeks reversal on grounds that these words do not "usefully convey the extent" of her capabilities and "are not terms of art within the SSA lexicon." Doc. 11, at 4. The undersigned finds no error.

5

Something is "routine" if it constitutes "a regular way of doing things" or a "situation in which things are always done the same way." Merriam-Webster Online Dictionary (last visited Oct. 22, 2014).[7] The term "superficial" is defined in part as "relating to . . . a surface" or being "concerned only with the obvious or apparent." *Id*.[8] In employing these terms, the ALJ was acknowledging that Plaintiff can work with supervision that is consistent and always done the same way, and can interact with her coworkers on matters that are only obvious or apparent. The undersigned finds no grounds for reversal. *See, e.g., Pool v. Astrue*, No. CIV-11-338-M, 2012 WL 1893632, at *7 (W.D. Okla. May 3, 2012) (magistrate judge's unpublished report and recommendation) (rejecting plaintiff's challenge to the ALJ's use of the word "superficial" because it is clear that the ALJ used the word to acknowledge that plaintiff was unable "to engage in close interaction with the general public or coworkers"), *adopted*, 2012 WL 1893649 (W.D. Okla. May 23, 2012) (unpublished order).

### D. The ALJ's alleged failure to incorporate Plaintiff's "fair" prognosis into the RFC.

Next, Plaintiff claims that a mental health worker gave her a "fair" prognosis, and, relying on *Cruse v. U.S. Dep't of Health & Human Servs.*, 49

---

[7] Available at: http://www.merriam-webster.com/dictionary/routine

[8] Available at: http://www.merriam-webster.com/dictionary/superficial

F.3d 614, 618 (10th Cir. 1995), argues that "fair" equates to a "marked" limitation. Doc. 11, at 5.

In *Cruse*, the Court examined a mental assessment form and noted that on that form, "fair" was defined as the "[a]bility to function in this area is seriously limited but not precluded." 49 F.3d at 618. The Court then noted that "seriously limited but not precluded" "is essentially the same as the listing requirements definition of the term 'marked.'" *Id*. In turn, "'marked'" means "more than moderate, but less than extreme." *Id*.

Plaintiff's reliance on *Cruse* is misplaced for two reasons. First, Plaintiff mental health worker was not completing a mental assessment form and did not opine that Plaintiff's *functional abilities* are "fair." Instead, the social worker completed an intake assessment for Plaintiff and commented that Plaintiff's "prognosis is fair. It is anticipated that she will benefit from recommended services, should she fully participate in these services." AR 543. Thus, the social worker's use of the word "fair" in Plaintiff's case has no similarity to the use of the term "fair" in *Cruse*.

Second, a "marked" limitation does not preclude an individual from working. Indeed, in his Mental RFC assessment for Plaintiff, Dr. Tom Shadid noted that she has "marked" limitations in her ability to "understand and remember detailed instructions," "carry out detailed instructions," and "interact appropriately with the general public." *Id*. at 435-36. Thus, Dr.

7

Shadid opined that Plaintiff can "perform simple tasks with routine supervision," "relate to supervisors and peers on a superficial work basis," and "cannot relate to the general public." *Id.* at 437. The ALJ gave this opinion great weight and incorporated it into Plaintiff's RFC. *Id.* at 46. So, even if Plaintiff's "fair" prognosis could be read to include "marked" limitations, the ALJ did not ignore those limitations in assessing her RFC.

For both reasons, the undersigned finds that reversal is not warranted.

**E.     The ALJ's alleged errors relating to Plaintiff's GAF scores.**

During her intake assessment at Red Rock Behavior Health Services in January 2011, Plaintiff was assigned a GAF score of 38 and it was noted that her highest previous-year GAF score was 31. *Id.* at 631. Then, from September 2011 to June 2012, Plaintiff was routinely assigned a GAF score of 49. *Id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620. The ALJ failed to specifically discuss this evidence, and Plaintiff argues reversible error. Doc. 11, at 8-9, 13-15. The undersigned concludes that any error is harmless.

"The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary*, 695 F.3d at 1162 n.1 (citation omitted). A GAF score of 31-40 indicates a "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to

8

work; . . .).” *Id.* A GAF score of 41-50 indicates a "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

The undersigned finds that whether analyzed in terms of ignored evidence, or a violation of the treating physician's rule,[9] the ALJ's failure to specifically discuss Plaintiff's GAF scores is harmless.

For example, in theory Plaintiff's GAF scores of 38 and 49 can indicate a major or serious impairment in occupational work. However, Plaintiff's treatment notes do not indicate how her score was calculated and "[her] GAF scores [are] not linked to any particular symptoms" or functional limitations. *Harper v. Colvin*, 528 F. App'x 887, 891 (10th Cir. 2013); *see also* AR 602, 604, 606, 608, 610, 612, 614, 616, 618, 620, 631. And, a GAF score "'is not essential to the RFC's accuracy.'" *Harper*, 528 F. App'x 891 (citation omitted). Here, the ALJ discussed the relevant treatment notes, the other mental health evidence, and Dr. Shadid's Mental RFC assessment. AR 44-

---

[9] Under what is commonly referred to as the "treating physician rule," a treating physician's opinion is generally afforded greater weight than the opinions from non-treating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). If the ALJ has grounds for rejecting the opinion, he must articulate those specific and legitimate reasons. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, a social worker, and not a treating doctor, assigned Plaintiff's lowest GAF score. AR 631. Illegible signatures make it unclear whether treating doctors or social workers assigned Plaintiff's later GAF scores. *See id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620. The court need not decide however, because the ALJ's alleged error is harmless.

46. This was sufficient, and the undersigned finds that even if the ALJ had specifically discussed Plaintiff's GAF scores, he could not have resolved the matter in any other way. *See Allen*, 357 F.3d at 1145; *see also Harper*, 528 F. App'x at 891-92 (holding that the ALJ's failure to discuss claimant's GAF score of 49 was harmless error where the ALJ considered the treatment notes and the treatment notes "did not contain any evidence of a specific limiting effect of [the claimant's] depression"); *Luttrell v. Astrue*, 453 F. App'x 786, 791-92 (10th Cir. 2011) (holding no reversible error where the ALJ did not address GAF scores but instead relied on a "more probative" mental RFC assessment involving the claimant's functional limitations); *Atkinson v. Astrue*, 389 F. App'x 804, 808 (10th Cir. 2010) (holding harmless the ALJ's failure to specifically discuss GAF scores where the scores themselves were not connected to any functional abilities and holding that under the circumstances: "It was enough that the ALJ discussed the other aspects of Dr. Robbins's report, and he gave no indication that he rejected any part of it.").

So, the undersigned finds no grounds for reversing the Commissioner's decision based on this alleged error.

### F. The ALJ's alleged selective reliance on the record.

It is well established that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a

10

finding of nondisability[.]" *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Plaintiff alleges that the ALJ did just that, relying on notations that Plaintiff was "doing well" on medications, and ignoring evidence relating to "powerful prescription medications," numerous low GAF scores, hallucinations, hospitalizations, and multiple suicide attempts. Doc. 11, at 6-10. The undersigned disagrees.

The ALJ documented Plaintiff's mental health history, noting that she has had "a total of three psychiatric hospitalizations," "three suicide . . . attempt[s]," and is taking medications for depression and schizophrenia. AR 44. He then discussed the mental health notes from consultative physician Dr. Amal Chakraburtty, psychiatric evaluator Dr. J.H. Ghaznavi, and nonexamining psychologist Dr. Tom Shadid. *Id.* at 44-46. In so doing, the ALJ acknowledged that in February 2011, Plaintiff presented with "thought content [which] had voices of multiple persons conversing among themselves but did not give her commands; visual hallucinations of shadows and animals; paranoia; skepticism of the outside world; sad and mad mood; flat and detached affect; poor insight; [and] judgment full of antisocial qualities[.]" *Id.* at 44. Clearly, the ALJ did not ignore evidence relating to Plaintiff's medications, hallucinations, hospitalizations, or suicide attempts.

In September 2011, Plaintiff began receiving treatment at the North Rock Medication Clinic. The ALJ cited those progress notes, contained in

11

Exhibit 33F, and found that: "Records from Red Rock Medication Clinic document that the claimant is . . . *doing well* . . . on medications. (Exhibit 33F)." *Id.* at 45 (emphasis and ellipses in original).[10] Plaintiff complains that this notation ignores Exhibit 33F's remaining pages, which show that Plaintiff had numerous low GAF scores and had medication changes. Doc. 11, at 6-7. The Plaintiff's argument is unpersuasive.

Though Plaintiff did have some medication changes, she and mental health providers *consistently* reported that she was doing well on her medications. AR 601-602, 606, 608, 610-11, 614, 616, 620. Indeed, during this time span, Plaintiff routinely presented with: (1) a lack of side effects, *id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620; (2) neat/clean or appropriate appearance, *id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620; (3) normal speech, *id.* at 604, 606, 608, 610, 614, 616, 618, 620; (4) normal mood, *id.* at 602, 608, 610, 612, 614; (5) appropriate affect, *id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620; (6) "oriented x 3" thoughts, *id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620; (7) an absence of delusions and hallucinations, *id.* at 602, 604, 606, 608, 610, 612, 614, 616; and (8)

---

[10] For Exhibit 33F, the ALJ refers to the clinic as the "Red Rock Medication Clinic." AR 44-45. Exhibit 33F contains progress notes from "North Rock Medication Clinic" and treatment plans from "Red Rock Behavioral Health Services." *Id.* at 601-637. The undersigned finds these titles interchangeable. *See* http://www.red-rock.com/Services/MedClinic.html (explaining that "North Rock [Medical Clinic] is a collaborative effort between North Care Center and Red Rock Behavioral Health Services.").

cooperative interactions, *id.* at 602, 604, 606, 608, 610, 612, 614, 616, 618, 620. And, as addressed above, the undersigned finds no reversible error in the ALJ's failure to specifically discuss Plaintiff's GAF scores.

Based on the foregoing, the undersigned finds no merit in Plaintiff's argument that the ALJ "cherry-picked" the record, relying only on evidence that supports his conclusion.

### G. The ALJ's alleged failure to discuss "lay" evidence.

According to Plaintiff, despite the fact that the ALJ stated that "[l]ay information is best provided by community health centers or day care centers if the claimant has participated in such programs," *id.* at 47, the ALJ did not actually discuss such evidence. Doc. 11, at 11. Unfortunately, Plaintiff does not cite any "lay" evidence that the ALJ ignored, nor does she explain how that evidence would affect her RFC. The undersigned will not search the record for her nor address under-developed arguments. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review); *see also Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (holding that the court will consider waived all "unspecific, undeveloped, and unsupported" arguments).

13

## H. The ALJ's alleged failure to consider evidence of Plaintiff's wrist impairment.

Finally, Plaintiff alleges that the ALJ ignored evidence at "AR 645-660 which indicates a diagnosis of right DeQuervain's tenosynovitis with a surgery for a tendon DeQuervain release, inflammatory arthritis, right arm and wrist pain and hand weakness and others." Doc. 11, at 11-12. Plaintiff argues that this diagnosis involves her dominant hand and that the ALJ erred in failing to consider the impact of this impairment on her RFC. *Id.* at 12. Again, the undersigned finds no grounds for reversal.

The ALJ issued his decision in August 2012, AR 49, and Plaintiff's relevant evidence is dated September through November, 2012. *Id.* at 645-660 (Exhibit 34F). Plaintiff presented this evidence to the Appeals Council, *id.* at 5, and was informed that "[t]his new information is about a later time. Therefore it does not affect the decision about whether you were disabled beginning on or before August 10, 2012. If you want us to consider whether you were disabled after August 10, 2012, you need to apply again." *Id.* at 2. This appears to be the proper recommendation. *See* 20 C.F.R. § 416.330(b) (Noting that if a claimant meets all the requirements for supplemental security income eligibility *after* the period in which an application is filed, the claimant "must file a new application for benefits").

Clearly, the ALJ could not have erred in failing to consider this evidence, and Plaintiff does not challenge the Appeals Council's recommendation. More importantly, Plaintiff had surgery on her wrist on November 14, 2012, AR 649, and there are no further treatment notes relating to her wrist. Indeed, no physician has opined that Plaintiff has any functional limitations in her right wrist. So, the undersigned finds no grounds for reversing the Commissioner's decision.

## V.  Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 3rd day of December, 2014, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

15

ENTERED this 13th day of November, 2014.

                                                                                _____
                                                                                SUZANNE MITCHELL
                                                                                UNITED STATES MAGISTRATE JUDGE